# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
## CENTRAL DIVISION

| | |
|---|---|
| MICHAEL KEVIN VAN NAME,<br><br>Plaintiff,<br><br>v.<br><br>ALFRED C. BIGELOW et al.,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:09-CV-630 CW<br><br>District Judge Clark Waddoups |

Plaintiff, Michael Kevin Van Name, filed this *pro se* civil rights suit under 42 U.S.C. § 1983, s*ee* 42 U.S.C.A. § 1983 (West 2011), while confined at the Central Utah Correctional Facility in Gunnison, Utah. Plaintiff was allowed to proceed *in forma pauperis* under 28 U.S.C. § 1915, *see* 28 U.S.C.A. § 1915 (West 2011), and his Complaint was served upon Defendants by the United States Marshals Service. Defendants filed an Answer and a *Martinez* Report (Doc. 61) addressing Plaintiff's allegations.[1] No additional discovery was conducted. Before the Court is Defendants' Motion for Summary Judgment.

## BACKGROUND

Plaintiff's Complaint alleges cruel and unusual punishment under the Eighth Amendment

---

[1] In *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978), the Tenth Circuit approved the practice of district courts ordering prison administrators to prepare a report to be included with the pleadings in cases where a prisoner alleges a constitutional violation by prison officials.

based on denial of humane conditions of confinement.² Specifically, Plaintiff alleges that while attending educational classes at the correctional facility, he was denied adequate toilet access to accommodate his medical condition which caused him to defecate in his pants. Plaintiff further alleges that after defecating in his pants he was unable to leave class to clean himself up, forcing him to sit in his own feces until class was finished. Plaintiff states that he filed numerous written grievances requesting accommodations under the Americans with Disabilities Act (ADA), including a bathroom pass for use during classes if necessary, but his requests were repeatedly denied based on Defendants' determination that Plaintiff did not suffer from any diagnosed medical condition that would qualify as a disability.³

After seven months, during which Plaintiff allegedly experienced several more accidents, Plaintiff eventually received a special bathroom pass after writing to the Utah Attorney General's Office, which forwarded Plaintiff's letter to the medical director for the Utah Department of Corrections. Plaintiff alleges that during the seven months without a bathroom pass he experienced serious physical pain and emotional trauma. Plaintiff's Complaint names as defendants numerous corrections officials in their individual capacities including those who refused Plaintiff restroom access and others who denied his grievances and ADA requests. Plaintiff seeks compensatory and punitive damages, attorney fees and costs.

---

² Plaintiff's Amended Complaint also asserts a due process claim under the Fifth and Fourteenth Amendments, however, Plaintiff does not allege specific facts to support such a claim and his allegations properly fall under the Eighth Amendment.

³ Despite his repeated references to the ADA Plaintiff's Amended Complaint does not assert a separate claim under that statute.

Defendants move for summary judgment on all claims, asserting there are no genuine issues of material fact and that the evidence does not support a claim of cruel and unusual punishment under the Eighth Amendment. Specifically, Defendants contend that they were not aware Plaintiff suffered from a serious medical condition requiring immediate, unlimited and unfettered access to a toilet; nor were they deliberately indifferent to Plaintiff's needs. Defendants also assert there is insufficient evidence to support Plaintiff's allegation that he ever defecated on himself or was forced to sit in his own feces. Plaintiff has had ample opportunity to respond to Defendants' summary judgment motion and has filed an opposition memorandum with supporting documentation.

## FACTS[4]

1. From September 18, 2008, to September 18, 2009, Plaintiff was an inmate housed at the Central Utah Correctional Facility.

2. On September 22, 2008, Plaintiff was seen by Dane Thurston, a Physician's Assistant, for complaints of weight loss and a claimed history of "dumping syndrome" reportedly caused by removal of sections of his large and small bowel in 1992 following a gunshot injury. Thurston reviewed Plaintiff's medical records and found no evidence of any bowel resection. Thurston decreased Plaintiff's prescription for Prilosec and started him on Zantac to reduce stomach acid. (Declaration of Dane Thurston ("Thurson Decl.")(Doc. 69) ¶ 6.)

3. On November 6, 2008, Plaintiff was denied access to the toilet while attending

---

[4] The material facts presented here are taken from Plaintiff's sworn Amended Complaint and the parties' summary judgment materials. Except as noted, these facts are not in dispute.

education classes, causing him to defecate in his pants. (Compl. ¶¶ 7, 8.)

4. Inmates at the Central Utah Correctional Facility (CUCF) are allowed to access the toilets in their cells before they walk to the Education unit in the Henrie Building to attend classes. (Declaration of Brickell Johnson ("Johnson Decl.")(Doc. 70) ¶ 4.)

5. Inmates at CUCF are also allowed to use the restroom before classes start from approximately 5 minutes before the hour until approximately 10 minutes after the hour. (Johnson Decl. ¶ 5.)

6. Inmates at CUCF may be excused from class to use the restroom for emergencies subject to the discretion of correctional officers. (Johnson Decl. ¶ 12.)

7. Education classes at CUCF last approximately 45 minutes. (Johnson Decl. ¶ 6.)

8. Prior to the alleged November 6, 2008 incident, Plaintiff had been incarcerated for over two months and had not reported any similar accidents. (Johnson Decl. ¶¶ 10, 11, 12.)

9. On November 13, 2008, Plaintiff submitted a medical request for a bathroom pass during classes but was told that medical did not provide such passes. (Donaldson Decl. ¶ 5.)

10. On November 14, 2008, Plaintiff again saw P.A. Thurston, who diagnosed Plaintiff with irritable bowel syndrome (IBS) and provided medication (Dicyclomine) to alleviate his condition. Thurston noted that Plaintiff did not wear "Depends" or have frequent episodes of fecal incontinence. (Thurston Decl. ¶ 9.)

11. IBS can lead to frequent diarrhea but typically does not result in fecal incontinence. (Donaldson Decl. ¶ 7.)

12. In response to Plaintiff's complaint that he was having trouble controlling his

4

bowel movements, he was offered "Depends." Plaintiff refused this accommodation. (Thurston Decl. ¶ 11.)

13. On November 17, 2008, Plaintiff submitted a Level One grievance asserting that his chronic diarrhea was a disability under the ADA and requesting a bathroom pass for use during classes. Plaintiff also complained that Defendant Thurston had not diagnosed or treated him properly. (Donaldson Decl. ¶ 6.)

14. On January 29, 2009, Captain Cutler responded to Plaintiff's Level One grievance stating that based on his research and review of Plaintiff's medical records there was no evidence that Plaintiff suffered from a condition amounting to a disability impinging on his major life functions as required under the ADA. (Donaldson Decl. ¶ 11.)

15. On February 9, 2009, Plaintiff filed an Inmate ADA Request & Decision Form asserting that he had "dumping syndrome." The following day Deputy Warden John Irons responded that he had forwarded Plaintiff's request to medical staff for a response. (Donaldson Decl. ¶ 13.)

16. On February 26, 2009, Sara Donaldson, the Medical Administrator at CUCF, reported to Irons that Plaintiff suffered from IBS, not "dumping syndrome," and that he was on medication do alleviate his discomfort. Donaldson also reported her recommendation that Plaintiff use the bathroom before leaving his cell and during breaks in education classes as needed. (Donaldson Decl. ¶ 14.)

17. On March 5, 2009, Angie Stevens, ADA Coordinator responded to Plaintiff's request for ADA accommodations stating that no accommodation would be provided at that time

based on statements from medical personnel.  (Donaldson Decl. ¶ 15.)

18.	On March 19, 2009, Plaintiff received a letter from Sharel S. Reber Assistant Attorney General with the State of Utah, in response to a letter from Plaintiff dated February 23, 2009.  Reber stated, "[d]ue to the serious nature of your allegations, I have forwarded your letter to Dr. Garden, the medical director for the prison, for immediate attention."  (Doc. 79-3 at 10.)

19.	On March 23, 2009, Plaintiff was issued a bathroom pass allowing him unlimited access to the restroom while in programing and education.  (Donaldson Decl. ¶ 16.)

20.	On April 27, 2009, Angie Stevens followed up on Plaintiff's request for ADA accommodations stating that based on the issuance of a bathroom pass Plaintiff's needs had been met and no further accommodation was necessary under the ADA.  (Donaldson Decl. ¶ 17.)

## ANALYSIS

I.	**Summary Judgment Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses," *Celotex v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553 (1986), thus, "[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought."  Fed. R. Civ. P. 56(a).

The party moving for summary judgment bears the initial burden of showing "that there is an absence of evidence to support the non-moving party's case."  *Celotex*, 477 U.S. at 325.  This

burden may be met merely by identifying portions of the record which show an absence of evidence to support an essential element of the opposing party's case. *Johnson v. City of Bountiful*, 996 F. Supp 1100, 1102 (D. Utah 1998). Once the moving party satisfies its initial burden "the burden then shifts to the nonmoving party to make a showing sufficient to establish that there is a genuine issue of material fact regarding the existence of [the disputed] element." *Id.* A fact in dispute is "material" only if it might affect the outcome of the suit under governing law. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997). The dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A nonmovant "that would bear the burden of persuasion at trial" must "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of a trial from which a rational trier of fact could find for the nonmovant." *Adler v. Wal-Mart Stores*, 144 F.3d 664, 671 (10th Cir. 1998). Mere allegations and references to the pleadings will not suffice, instead, the specific facts put forth by the nonmovant "must be identified by reference to an affidavit, a deposition transcript or a specific exhibit incorporated therein." *Thomas v. Wichita Coca-Cola Bottling*, 968 F.2d 1022, 1024 (10th Cir. 1992). Moreover, "the nonmovant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient." *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir .1991). The court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Lopez v. LeMaster*, 172 F.3d 756, 759 (10th Cir. 1999). Conclusory allegations are given no weight, and

7

"[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient" to overcome a summary judgment motion. *Anderson*, 477 U.S. at 249, 252.

## II. Legal Standard for Prison Conditions Claims

The Eighth Amendment's prohibition on cruel and unusual punishment requires that prison officials "provide humane conditions of confinement by ensuring that inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee inmates' safety." *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998). An Eighth Amendment conditions-of-confinement claim consists of both an objective and subjective component. The objective component is met only if the condition complained of is "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 1976 (1994). A condition is sufficiently serious if it poses "a substantial risk of serious harm" to the inmate. *Id.* Because the sufficiency of a conditions-of-confinement claim depends upon "the particular facts of each situation; the 'circumstances, nature, and duration' of the challenged conditions must be carefully considered." *Despain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (quoting *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000)). "While no single factor controls . . . the length of exposure to the conditions is often of prime importance." *Id.* As the severity of the conditions to which an inmate is exposed increases, the length of exposure required to make out a constitutional violation decreases. Accordingly, "minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while substantial deprivations . . . may meet the standard despite a shorter duration." *Id.*

The subjective component of a conditions-of-confinement claim requires the plaintiff to

8

show that the defendant exhibited "deliberate indifference" to the inmate's health or safety. *Farmer*, 511 U.S. at 832. Deliberate indifference "requires both knowledge and disregard of possible risks, a *mens rea* on a par with criminal recklessness." *Despain v. Uphoff*, 264 F.3d 965, 975 (10th Cir. 2001). The defendant must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

**III.    Defendants' Motion for Summary Judgment**

Defendants assert they are entitled to summary judgment because the evidence does not support the conclusion that Plaintiff was subjected to any deprivation that was objectively sufficient serious to warrant constitutional protection. Defendants further assert there is no evidence they were deliberately indifferent to Plaintiff's needs. The Court considers each of these arguments in turn.

**A.    Objective Test**

Courts have repeatedly held that intentionally exposing inmates to human waste can, under some circumstances, constitute cruel and unusual punishment. *See e.g, DeSpain*, 264 F.3d at 974 ("Exposure to human waste, like few other conditions of confinement, evokes both the health concerns emphasized in *Farmer* and the more general standards of dignity embodied in the Eighth Amendment."); *Fruit v. Norris*, 905 F.2d 1147, 1151 (8th Cir. 1990) ("[C]ourts have been especially cautious about condoning conditions that include an inmate's proximity to human waste . . . ."); *Michaud v. Sheriff of Essex County*, 390 Mass. 523 (1983) (compiling cases showing "an intolerance for confinement which requires persons to live in close proximity to

their own human waste and that of others."). However, the circumstances presented here are much different from other cases where courts have found exposure to human waste sufficiently serious to invoke constitutional protections. *See, e.g., DeSpain*, 264 F.3d at 975 (finding that plaintiff met the objective prong of *Farmer* test where plaintiff was exposed for thirty-six hours to stench of sitting urine in his toilet and urine and feces in water near his cell and where officers rolled food cart through the urine-mixed water); *Johnson v. Pelker*, 891 F.2d 126, 139 (7th Cir. 1989) (holding that three days in cell with feces smeared on walls was not within "civilized standards, humanity, and decency"); *McBride v. Deer*, 240 F.3d 1287, 1292 (10th Cir. 2001) (finding "sufficiently serious" conditions where inmate was detained in feces-covered cell for three days).

The facts here show that Plaintiff was not denied access to a toilet, nor was he exposed to human waste, for any significant period of time. According to the undisputed facts, Plaintiff had access to a toilet in his cell which he could use immediately before and after classes. In addition, Plaintiff was allowed to use the restroom each and every hour between classes for approximately 15 minutes with limited exceptions. Thus, at most, Plaintiff was only deprived of toilet access for less than forty-five minutes at a stretch. As Defendants have noted, even outside prison it is quite common to be without access to a toilet for periods longer than forty-five minutes. Thus, Plaintiff cannot show that such a short-term deprivation amounts to a denial of "the minimal civilized measure of life's necessities" under normal conditions. *Wilson*, 501 U.S. at 298. In fact, courts have specifically held that restricted access to the toilet for such limited periods of time does not constitute cruel and unusual punishment. *See e.g., DeSpain*, 264 F.3d at 974

("[T]here is 'no doubt that toilets can be unavailable for some period of time without violating the Eighth Amendment'")(quoting *Johnson*, 217 F.3d at 733); *Peel v. Turner*, 2007 WL 4571114, 4 (N.D. Okla. 2007)(Plaintiff's limited access to the toilet does not constitute cruel and unusual punishment.)

Moreover, as unpleasant as Plaintiff's ordeal must have been, there is no evidence that Plaintiff was ever subjected to a substantial risk of serious harm. Although Plaintiff states that the incident was humiliating and traumatic, there is no evidence that Plaintiff suffered any serious physical or emotional injury. In fact, after returning to his cell Plaintiff had access to a toilet and sink and was able to immediately wash himself and his clothing. Plaintiff was also able to obtain timely medical attention. Just one day after filing his medical care request Plaintiff met with P.A. Thurston, was diagnosed with IBS, and was prescribed medicine for his condition. It is doubtful whether someone outside of prison would have received such timely medical care for such a condition.

Thus, the Court concludes that Plaintiff has not presented sufficient evidence to show that he was subjected to a deprivation that was objectively sufficient serious to violate the Eighth Amendment prohibition on cruel and unusual punishment.

**B. Subjective Test**

Turning to the subjective prong of the *Farmer* analysis, there is no evidence that Defendants knew Plaintiff faced a substantial risk of serious harm, or were deliberately indifferent to Plaintiff's health or safety. In fact, Defendants reasonably believed that Plaintiff did not have a serious medical condition that prevented him from holding his bowels during class

time, and that Plaintiff had adequate access to the restroom despite his condition.

The record shows that Defendants had no knowledge of any problem prior to the incident on November 6, 2008, and that immediately thereafter Plaintiff was evaluated and diagnosed with IBS. Plaintiff has not provided any evidence to refute Defendants assertions that IBS does not typically result in fecal incontinence or that Plaintiff was receiving adequate treatment for IBS. Moreover, Plaintiff has not offered any evidence besides his own vague statements to support his contention that he continued to have accidents while in class. For instance, Plaintiff does not document the dates of any other incidents, nor does he provide any details about them. According to the Declaration of Officer Brickell Johnson, the correctional officer who monitored the Education Classes during the relevant time period, Plaintiff never told her that he had soiled himself, nor did he tell her that he needed to use the bathroom on an emergency basis. (Johnson Decl. ¶ 10.) Officer Johnson also states that she never received any complaints from other inmates or staff that Plaintiff had soiled himself, and that if she had known there was a problem she would have allowed Plaintiff to use the bathroom during class. (Id.) Plaintiff has not offered any evidence besides his own statements to refute Johnson's testimony. If Johnson's statements were false Plaintiff could have easily refuted them with affidavits of other inmates or staff, but he has not. Thus, given the absence of any corroborating evidence Plaintiff's statements are not sufficient to create a genuine issue of material fact for trial. *See Slowiak v. Land O'Lakes, Inc.*, 987 F.2d 1293, 1295 (7th Cir. 1993) ("[s]elf-serving affidavits without factual support in the record will not defeat a motion for summary judgment.").

The failure of grievance personnel and administrators to immediately grasp the severity of

Plaintiff's condition also does not show deliberate indifference.  Defendants have shown that they reasonably relied on the expert advice of medical personnel who determined that Plaintiff did not have a serious medical condition requiring special accommodation.  Even assuming this advice was flawed, Defendants were not in a position to second guess it.  Moreover, to the extent that medical personnel failed to properly diagnose or treat Plaintiff's condition they would only be guilty of negligence, not deliberate indifference.

Finally, the record shows that before Plaintiff filed this suit he had already received a bathroom pass affording him unlimited restroom access during classes.  Although it is somewhat disturbing that this accommodation was only provided after Plaintiff wrote a letter to the Utah Attorney General's office, the Court cannot say that the failure to provided it sooner was the result of deliberate indifference.  Rather, Defendants may have simply concluded that it was easier to provide Plaintiff with an unnecessary accommodation than to continue to debate the point.  In any case, the record shows that by the time Plaintiff filed this suit his needs had already been met.

In sum, there is insufficient evidence here to support the finding that Defendants were deliberately indifferent to Plaintiff's health or safety.  Thus, Defendants are entitled to summary judgment.

## ORDER

Based on the forgoing analysis, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (Dkt. no. 73) is **GRANTED** and this case is **CLOSED**.

DATED this 11th day of October, 2011.

> BY THE COURT:
>
> _____
> CLARK WADDOUPS
> United States District Judge